■ In the Matter of the Claim of YU PING JIN, Respondent, v CHEN DUN KAI, Doing Business as FRESCO TACOS, et al., Appellants. WORKERS' COMPENSATION BOARD, Respondent. [932 NYS2d 579]—

Kavanagh, J.

Decedent was delivering food on a motorcycle for the employer when he sustained fatal injuries in a motor vehicle accident. Two days after the accident, the employer filed a C-2 form reporting his death and stated that decedent's gross weekly wage was $350. Claimant, decedent's widow, subsequently filed an application for death benefits, alleging that decedent's monthly pay was $2,500. Thereafter, the employer filed a C-11 form which reported that decedent earned $780 per week. After concluding that decedent's death arose from a work-related injury, a hearing was held and a Workers' Compensation Law Judge (hereinafter WCLJ) determined that decedent's average weekly wage for the year prior to his death was $780, and ordered death benefits paid accordingly. The employer and its workers' compensation carrier (hereinafter collectively referred to as the carrier) sought review by the Workers' Compensation Board, which adhered to the WCLJ's decision, prompting this appeal.*

Because substantial evidence supports the Board's determination as to the amount of decedent's average weekly wage at the time of his death (*see Matter of Tangora v Volume Servs. Am.*, 32 AD3d 604, 605 [2006]; *Matter of Blackwelder v Faith Heritage School*, 27 AD3d 1004, 1006 [2006]; *Matter of Kellish v Kellish Tire Sales, Inc.*, 12 AD3d 804, 805 [2004]; *compare Matter of Bran v Wimbish*, 73 AD3d 1378, 1379 [2010], *lv dismissed* 15 NY3d 818 [2010]), we affirm. Workers' Compensation Law

---

* While the carrier also claimed before the WCLJ and Board that decedent may have had another job at the time of his death, the notice of appeal filed specifically limits the issue for our review to the Board's decision regarding claimant's average weekly wage and the proper rate of benefits.

§ 14 provides how an employee's average wage is determined (*see also* Workers' Compensation Law § 2 [9]) and, in that regard, employers are required to retain payroll records that are used to make that calculation (*see* Workers' Compensation Law § 131). Here, the employer kept no payroll records and acknowledged that decedent was paid "off the books." In fact, the only documentation provided by the employer regarding what it paid decedent was the C-11 form, indicating that he received a weekly wage, including tips, amounting to $780. As for the carrier's claim that decedent did not earn tip income, the employer subsequently confirmed, both in the report prepared in the investigation of this matter and in the C-11 form that it filed with the Board, that tips were a regular component of decedent's income. As a result, contrary to the carrier's claim, tips must be included in any calculation of decedent's average weekly wage. Moreover, we see no reason that the Board should have ignored the employer's own representation that decedent's average weekly wage was $780 (*see* 12 NYCRR 357.1; *compare Matter of Salinas v Kinderhook Diner*, 306 AD2d 746, 747 [2003]).

We have reviewed the carrier's remaining claims and find them to be lacking in merit.

Mercure, J.P., Rose, Malone Jr. and Garry, JJ., concur. Ordered that the decision is affirmed, without costs.